**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JEROME JUNIOR WASHINGTON,   )
                                   )     Civil Action No. 19-1461
           Plaintiff,      )
                                   )     Senior District Judge Joy Flowers Conti
        v.               )     Magistrate Judge Lisa Pupo Lenihan
                                   )
SUPERINTENDENT GILMORE,   )
LIEUTENANT TROUT, SERGEANT   )
DEMASKE, UNIT MANAGER   )
LACKEY, C.O. ULIZIO, JOHN   )
DOES 1-4,   )
                                   )
           Defendants.     )

## OPINION

### I.    Introduction

This action arises under 42 U.S.C. § 1983 and was initiated by pro se plaintiff Jerome Junior Washington ("Washington" or "plaintiff"). Washington, who is presently incarcerated at the State Correctional Institution at Rockview ("SCI Rockview") (ECF No. 68-1), was previously incarcerated at the State Correctional Institution at Greene ("SCI Greene"). He alleges that the defendants, Gilmore, Trout, Demaske, Lackey, and Ulizio[1] (collectively "named defendants"), who were employed by SCI Greene at all times relevant to this case, violated his rights guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution.

Currently pending before the court is a partial motion for judgment on the pleadings (ECF No. 33) filed by the named defendants. The motion was referred to a United States Magistrate Judge in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule

---

[1] Washington also named "Cert Team John Does 1 to 4" in the complaint, but service has not been effectuated on those defendants. The claims asserted against them are not at issue in this opinion.

72 of the Local Rules for Magistrate Judges. The magistrate judge in a Report and Recommendation ("R&R") recommended that the court grant the partial motion for judgment on the pleadings. Washington's timely objections to the R&R are now before this court.

As set forth in this opinion, Washington's objections are overruled, the R&R will be adopted in part and rejected in part. The partial motion for judgment on the pleadings will be: (1) granted to the extent some claims are dismissed with prejudice and some claims are dismissed without prejudice; and (2) denied with respect to the Fourteenth Amendment claim based upon violations of the Eighth Amendment, because that claim is subsumed into the Eighth Amendment claim.

## II.    Procedural History

On April 9, 2021, the named defendants filed a motion for judgment on the pleadings with respect to all claims, except for Washington's claim based upon violations of the Eighth Amendment (excessive force) and a brief in support of the motion. (ECF Nos. 33, 34.) On June 24, 2021, Washington filed a response in opposition to the motion. (ECF No. 51.) The motion for judgment on the pleadings was referred to the magistrate judge.

On December 15, 2021, the magistrate judge filed a R&R in which she recommended the court grant the partial motion for judgment on the pleadings. (ECF No. 62 at 1.) The magistrate judge explained that the parties had 14 days to file written objections to the R&R.

On February 8, 2022, Washington filed objections to the R&R. (ECF No. 65.) On February 23, 2022, the named defendants filed a response in opposition to the objections. (ECF No. 67.) On February 25, 2022, Washington filed a supplement to his objections. (ECF No. 68.) On March 15, 2022, Washington filed a second supplement to his objections. (ECF No. 73.) Washington's objections to the R&R are now ripe for disposition by the court.

### III.    Allegations in the Pleadings

#### A.  Complaint—Washington's Factual Allegations

At all times mentioned in the complaint: Washington was a prisoner at SCI Greene; Gilmore was the Warden at SCI Greene; Trout was a correctional officer and held the rank of lieutenant at SCI Greene; Demaske was a unit manager at SCI Greene; Ulizio was a correctional officer at SCI Greene; and John Does 1, 2, 3, and 4 were correctional officers at SCI Greene. (ECF No. 20 at 1-2.) Trout, Demaske, Ulizio, and John Does 1, 2, 3, and 4 were assigned to the mental health "SRTU" program at SCI Greene. (Id.)

On December 13, 2018, at or around 8:35 a.m., Washington was in the nude taking a shower in "GB Unit Bottom T[ier] Shower." (ECF No. 20 at 2.) Ulizio "continuously" went to the shower to "spy" on Washington and asked him "are you th[rough] yet[?]" (Id.) Washington would not respond to Ulizio. (Id.) At or around 9:38 a.m., Demaske asked Washington if he was ready to come out of the shower. (Id.) Washington did not respond to Demaske. (Id.) At or around 9:41 a.m., Demaske turned off the "GB Unit" shower water. He again asked Washington whether he was coming out of the shower. Washington did not respond. (Id.) Demaske said: "I don't care if you don't come out[.] I am going to leave your ass in [there]…all damn day[…]thinking I'm playing with you." (Id.) Washington did not respond to Demaske. (Id.)

At or around 9:50 a.m., Demaske, Ulizio, and John Does 1, 2, 3, and 4 came back to the shower with a "big-can [sic] of mace already drawn." (ECF No. 20 at 2.) Demaske yelled "put the razor down[,] put the razor down[,] and put your hand w[h]ere I can see them." (Id.) Washington did not have a razor, and he put his hands up in the air. (Id.) Demaske yelled "y[']all see the razor[?]" (Id.)

On December 13 or 18, 2018,[2] two prison officials escorted Washington to receive his legal mail. (ECF No. 20 at 3.) Trout told the prison officials to take Washington to the law library after he received his legal mail. (Id.) McCone, another correctional officer, told the prison officials to take Washington to the "strip cage" because the law library was being used and "Trout would see …[Washington] in the strip cage." (Id.) Trout said that on the same day:

– Trout either received a call or heard himself that there was a "disturbance on GB Unit and somebody got spray[ed]" (id.);

– Trout was told that Washington had the back end of a razor in the shower (id.);

– Trout retrieved his gas mask, went to Washington in the shower, and ordered Washington to "push the razor under the shower door" (id.);

– as Washington was on his knees, Washington "pushed out the back end to the razor" and Trout told Washington to "cuff up" so Washington could be "assess[ed] by medical" (id.);

– after Trout placed handcuffs on Washington, Washington was falling to the ground, and Trout ordered his officers to hold up Washington and to get something to cover Washington's naked body (id.);

– an orange smock was used to cover up Washington (id.);

– the razor blade did not have fingerprints on it because any fingerprints were washed off by the shower water (id.);

– Trout did not pick up the razor off the shower floor because he was "dealing" with Washington (id.);

– Trout lost track of the razor (id.);

– Washington was assessed and placed in the "P.O.C." cell (id.);

---

[2]     Washington identifies two dates in the complaint, i.e., December 13, 2018, and December 18, 2018. (ECF No. 20 at 2-3.) Based upon the other allegations of the complaint, however, it appears that the complained of events occurred on the same day. In any event, the exact date is not relevant to the court's disposition of the partial motion for judgment on the pleadings.

- Lackey ordered "accountability status" and sent her recommendation to Crum who signed off on the recommendation (id.);

- Crum conducted a security search of Washington's cell and could "destroy anything that belong[ed] to the state or that was…[given to Washington] by the state" and a confiscation slip was not required (id.);

- Trout would have to see the "tape" to determine what was taken out of Washington's GB10 cell and destroyed during the security search (id. at 4); and

- Lackey did not have to provide Washington with a "write up" to place Washington on "accountability status" (id.).

According to Washington, Trout participated in the "planned use of force" against Washington. (ECF No. 20 at 4.) Washington did not have a razor on December 18, 2018. (Id.) As a result of the planned use of force, Washington suffered burning in his penis, no sleep, "hair burning and [the] rest of…[his] body was on fire…." (Id.) Washington was deprived of showers, yard, and group. (Id.) Washington requests the removal from the positions of rank of Trout, Lackey, Demaske and Crum and for those officials to be laid off for one year without pay. Washington also requests $1,500.00 until his grievance is resolved, punitive damages, monetary damages and compensation, and an injunction order that the defendants in this case must "stop abusing their authority." (Id. at 6-7.)

According to Washington, the defendants did not respond to his grievances with respect to the events set forth in the complaint. (ECF No. 20 at 6.)

Washington asserts § 1983 claims based upon the deprivation of his rights guaranteed by the First (access to the courts), Eighth (cruel and unusual punishment, excessive force), and Fourteenth (cruel and unusual punishment) Amendments to the United States Constitution. (ECF No. 20 at 6.)

**B.  Answer—The Named Defendants' Factual Allegations**

At all times relevant to the complaint: Washington was a prisoner at SCI Greene (ECF No. 32 ¶ 1); Gilmore was a superintendent at SCI Greene (id. at ¶ 2); Trout was a lieutenant at SCI Greene (id. at ¶ 3); Demaske was a sergeant at SCI Greene (id. at ¶ 4); Lackey was a unit manager at SCI Greene (id. at ¶ 5); and Ulizio was a corrections officer at SCI Greene (id. at ¶ 6).

On December 13, 2018, Washington was involved in an incident in the shower of GB Housing Unit. (ECF No. 32 ¶ 9.) Uliizio, Demaske, and Trout were involved in the incident. (Id.) Washington was in the shower of GB Housing Unit and subjected to a burst of "OC spray" after refusing multiple orders to exit the shower and "making physical indications that he was going to commit self-harm with a razor." (Id. ¶ 9-1.)

Trout said:

– Trout either received a call or heard himself that there was a "disturbance on GB Unit and somebody got spray[ed]" (ECF No. 32 ¶¶ 10-2, 10-4b);

– Trout was told that Washington had the back end of a razor in the shower (id.);

– Trout retrieved his gas mask, went to Washington in the shower, and ordered Washington to "push the razor under the shower door" (id. ¶ 10-2);

– as Washington was on his knees, Washington "pushed out the back end to the razor" and Trout told Washington to "cuff up" so Washington could be "assess[ed] by medical" (id. ¶ 10-3);

– after Trout placed handcuffs on Washington, Washington was falling to the ground, and Trout ordered his officers to hold up Washington and to get something to cover Washington's naked body (id. ¶ 10-4a);

– an orange smock was used to cover up Washington (id.);

– the razor blade did not have fingerprints on it because any fingerprints were washed off by the shower water (id. ¶ 10-6);

– Trout did not pick up the razor off the shower floor because he was "dealing" with Washington (id. ¶ 10-7);

– Trout lost track of the razor (id.);

– Washington was assessed and placed in the "P.O.C." cell (id.);

– Lackey ordered "accountability status" and sent her recommendation to Crum who signed off on the recommendation (id. ¶ 10-8);

– Crum conducted a security search of Washington's cell and could "destroy anything that belong[ed] to the state or that was…[given to Washington] by the state" and a confiscation slip was not required (id. ¶ 10-9a);

– Trout would have to see the "tape" to determine what was taken out of Washington's GB10 cell and destroyed during the security search (id. ¶ 10-9b); and

– Lackey did not have to provide Washington with a "write up" to place Washington on "accountability status" (id. ¶ 10-10).

The named defendants assert 15 affirmative defenses in their answer. (ECF No. 32 ¶ 42.)

## IV.   Standard of Review

### A.  R&R

Pursuant to 28 U.S.C. § 636(b)(1)(C), this court must make a *de novo* determination of those portions of the R&R to which objections were made.  The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The court may also recommit the matter to the magistrate judge with instructions.

### B.  Motion for Judgment on the Pleadings, Rule 12(c)

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A party may use a motion for judgment on the pleadings under Rule 12(c) "as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings[,]"

e.g., lack of subject-matter jurisdiction (Rule 12(b)(1)) and failure to state a claim upon which relief can be granted (Rule 12(b)(6)). 5C Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004); Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).[3] When the defendant raises a Rule 12(b) defense in a Rule 12(c) motion for judgment on the pleadings, the court applies the same standards for deciding motions to dismiss under Rule 12(b). Turbe, 938 F.2d at 428.

One treatise has explained:

> As has been indicated by a considerable number of federal courts, a sampling of which are cited in the note below as illustrative, if any of these procedural defects are asserted upon a Rule 12(c) motion, presumably the district court will apply the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), (6), or (7) or under Rule 12(f).…The mere fact that these procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters. In this context, Rule 12(c) is merely serving as an auxiliary device that enables a party to assert certain procedural defenses after the close of the pleadings. For example, if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1).

5C Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004) (footnote omitted).

**1. Standards applicable to Rule 12(c) motion when a "12(b)(6) defense" is not raised**

When a Rule 12(c) motion is not used to raise Rule 12(b) defenses, judgment on the pleadings under Rule 12(c) is not appropriate "'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 193 (3d Cir. 1999) (quoting Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)). Motions under Rule 12(c),

---

[3]

that are not used to raise certain 12(b) defenses, require a determination on the merits of the case and "should be granted only where it is clear that the merits of the controversy can be fairly and fully decided in such a summary manner." In re Dreyfus Mut. Funds Fee Litig., 428 F. Supp. 2d 357, 358 (W.D. Pa. 2006).

**2.   Standards applicable to a Rule 12(c) motion when a Rule 12(b)(1) defense (lack of subject-matter jurisdiction) is raised**

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), a court must dismiss a matter if it lacks subject-matter jurisdiction over the complaint. Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be facial or factual in form. Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000); Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). A facial challenge attacks the complaint on its face and requires the court to consider only the complaint's allegations and to do so in the light most favorable to the plaintiff. Mortensen, 549 F.2d at 891. A factual challenge contests the existence of subject-matter jurisdiction, apart from any pleadings. Id. In reviewing a factual challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," even where disputed material facts exist. Id. In a factual challenge, the plaintiff has the burden of persuasion to show that jurisdiction exists. Id.; Gould, 220 F.3d at 178.

**3.   Standards applicable to a Rule 12(c) motion when a Rule 12(b)(6) defense (failure to state a claim) is raised**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the

plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

Id. (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

The Court of Appeals for the Third Circuit has instructed that "a court reviewing the sufficiency of a complaint must take three steps." Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016). The court of appeals explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."(citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Id. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). A plaintiff must set forth "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence" of the elements of the claim for relief. Connelly, 809 F.3d at 789; Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017).

Courts in resolving a motion to dismiss may consider facts that are subject to judicial notice.[4] Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (noting the court may consider "matters of which a court may take judicial notice" in resolving a Rule 12(b)(6) motion to dismiss) (quoted by Feingold v. Graff, 516 F. App'x 223, 225 (3d Cir.2013)).

Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). This rule has been interpreted by courts to mean that "prejudice to the non-moving party is the touchstone for the denial of an amendment[.]" Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). In the absence of prejudice of the nonmoving party, denial of an amendment "must be based on bad faith, or dilatory motives, truly undue or

---

[4]     Federal Rule of Evidence 201, in pertinent part, provides:

**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
>     **(1)** is generally known within the trial court's territorial jurisdiction; or
>
>     **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

FED. R. EVID. 201(b).

unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." <u>Id.</u> Allowing a party to amend is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). "In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." <u>Id.</u> at 115 (internal quotations and citations omitted).

### C.  Pro Se Litigant

In cases involving pro se litigants, the court must liberally construe submissions. <u>Hodson v. Alpine Manor, Inc.</u>, 512 F.Supp.2d 373, 384 (W.D. Pa. 2007) (citing <u>Haines v. Kerner</u>, 404 U.S. 519 (1972)). Submissions are read to "raise the strongest arguments suggested therein." <u>Id.</u> (citing <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir.1994)). Yet, "a forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability." <u>Id.</u>

### V.    Discussion

### A.  The magistrate judge's conclusions and Washington's objections.

The magistrate judge's recommendation that the court should grant the partial motion for judgment on the pleadings is based upon the following six conclusions:

(1) Washington cannot recover monetary damages against the named defendants in their official capacities because that kind of recovery is barred by the Eleventh Amendment to the United States Constitution (ECF No. 62 at 4);

(2) Washington is not entitled to prospective injunctive relief from the named defendants who are employed at SCI Greene because Washington is no longer incarcerated at that facility (<u>id.</u> at 6-7);

(3) Washington is not entitled to declaratory relief because declaratory relief is not warranted when a plaintiff seeks only a declaration that one party is liable to another (<u>id.</u> at 8);

(4) Washington is not entitled to § 1983 relief based on a violation of his First Amendment right of access to the courts because he does not have a constitutional right to a response to his grievance and he did not allege that SCI Greene's grievance procedures prevented him from accessing the courts (id. at 9);

(5) Washington is not entitled to § 1983 relief based upon violations of his rights guaranteed by the Fourteenth Amendment under the explicit textural source rule because his requests for relief under the Fourteenth Amendment are addressed by his § 1983 claim for relief based upon violations of his rights under the Eighth Amendment and he does not have a constitutional right to a grievance response; and

(6) Judgment should be entered against Gilmore, Trout, and Lackey because Washington failed to set forth factual allegations sufficient to show their personal involvement in the wrongs claims by Washington.

Each of those conclusions and any objection made to those conclusions will be addressed below.

**B. Washington's request for monetary damages from the named defendants in their official capacities and for prospective injunctive relief**

The named defendants in the motion for judgment on the pleadings argue that—based upon the face of the pleadings—they are entitled to judgment as a matter of law with respect to the § 1983 claims asserted against them in their *official* capacities because they are state officials immune from suit pursuant to the Eleventh Amendment to the United States Constitution. In other words, they assert a *facial challenge* to this court's subject-matter jurisdiction. See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) (explaining that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction").

**1. Monetary relief**

The magistrate judge agreed with the named defendants and recommended that judgment be entered in their favor with respect to all claims asserted under § 1983 against them in their *official* capacities in which Washington seeks monetary damages because "lawsuits seeking retrospective relief by private persons against a state, state officials, and state entities are generally barred by the Eleventh Amendment." (ECF No. 62 at 4-5 (citing Regents of the Univ. of Cal.v. Doe, 519 U.S. 425, 429 (1997).)  Washington in his supplement argues that the named defendants are not entitled to *qualified* immunity because they did not act in good faith. (ECF No. 68 at 2.) Contrary to Washington's arguments, the magistrate judge's recommendation in this respect was not based upon the doctrine of *qualified* immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The magistrate judge's recommendations implicate sovereign immunity under the Eleventh Amendment.

The Eleventh Amendment bars suits against a state in federal court. U.S. CONST. AMEND. XI. "Suits against state officials in their official capacity…should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991). In other words, claims for monetary damages against state officials sued in their official capacities are barred by the Eleventh Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). As explained above, "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" Blanciak, 77 F.3d at 694. Eleventh Amendment immunity is not premised upon a showing of good faith. See Camden Cty. Recovery Coal. v. Camden City Bd. of Educ. For Pub. Sch. Sys., 262 F. Supp. 2d 446, 448 (D.N.J. 2003)

14

(discussing the burden of proving that the Eleventh Amendment immunity applies). Washington did not otherwise challenge the magistrate judge's recommendation that his § 1983 claims asserted against the named defendants in their official capacities for monetary damages are barred by the Eleventh Amendment. The court, therefore, overrules Washington's objections based upon the doctrine of qualified immunity. The adopts the R&R with respect to the magistrate judge's recommendation that Washington is not entitled to monetary damages from the named defendants in their official capacities.

### 2. Prospective injunctive relief

Washington in the complaint seeks prospective injunctive relief from the named defendants in their official capacities, i.e., an order that the defendants "stop" the conduct complained of in the complaint. (ECF No. 23 at 6.) The magistrate judge concluded that—although injunctive relief is an exception[5] to a state official's Eleventh-Amendment immunity—Washington's requests for prospective injunctive relief are moot because he is no longer incarcerated at SCI Greene.[6] (ECF No. 62 at 6-8 (citing Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003).)

---

[5] As the magistrate judge explained, state-actor defendants may be sued in their official capacities for injunctive relief. (ECF No. 66 at 6.) One court has explained:

"[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will, 491 U.S. at 71 n.10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). Therefore, the Eleventh Amendment does not bar official-capacity actions seeking to enjoin future conduct. Pennhurst State Sch., 465 U.S. at 102-03.

Guilday v. Crisis Ctr. at Crozer-Chester Med. Ctr., No. CV 21-2010, 2022 WL 507484, at *3 (E.D. Pa. Feb. 17, 2022).

[6] Neither Washington nor the named defendants allege in the pleadings that Washington is currently incarcerated at SCI Rockview. The court, however, takes judicial notice of the Pennsylvania Department of Corrections Inmate Locator tool available at

In his objections to the R&R, Washington argues that his request for injunctive relief is not moot because "Defendant Wetzel…has a position of state-wide authority in the [Department of Corrections,]" and, therefore, Washington is not outside Wetzel's control. (ECF No. 65 at 6.) Washington in this case, however, did not sue a defendant named "Wetzel." (ECF No. 20.) Washington's arguments about his entitlement to injunctive relief from Wetzel are, therefore, not relevant or a basis upon which this court will reject the R&R with respect to this issue. Having received no other objection from Washington with respect to this issue, the court will adopt the R&R with respect to the magistrate judge's conclusion that Washington is not entitled to prospective injunctive relief from the named defendants because he is no longer incarcerated at SCI Greene where they are employed.

### 3. Relief available

#### a. Monetary relief

Based upon the allegations in the complaint that the named defendants are correctional officers employed by the Commonwealth of Pennsylvania, Washington *as a matter of law* cannot seek monetary damages from them in their official capacities. In other words, this court lacks subject-matter jurisdiction over those claims because the named defendants in their official capacities are immune from suit under the Eleventh Amendment. On that basis, the magistrate judge recommended that *judgment* be entered in favor of the named defendants with respect to

---

http://inmatelocator.cor.pa.gov/#/, which provides that Washington is presently incarcerated at SCI Rockview. Washington's filings with this court indicate that as of at least July 17, 2020, he was incarcerated at SCI Rockview. (ECF No. 16 ("Notice of Change of Address")); United States v. Wright, 787 F. App'x 69, 71 n.2 (3d Cir. 2019) (per curiam) (citing United States v. Lucas, 841 F.3d 796, 802 (9th Cir. 2016)); United States v. Sears, Crim. A. Nos. 12-200, 12-308, 2016 WL 3268857, at *10 n.5 (W.D. Pa. June 15, 2016).

the § 1983 claims asserted against them in their official capacities. Judgment or dismissal of those claims with prejudice, however, is not appropriate. One district court has explained:

> A "District Court's dismissal for lack of subject matter jurisdiction [is] by definition without prejudice." New Jersey Physicians, Inc. v. President of U.S., 653 F.3d 234, 241 n. 8 (3d Cir.2011) (citing Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 182 (3d Cir.1999) (recognizing that "a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice.' ")).

Polanco v. Omnicell, Inc., 988 F. Supp. 2d 451, 463 (D.N.J. 2013).

Pursuant to the Eleventh Amendment, this court is without subject-matter jurisdiction over the § 1983 claims asserted against the named defendants in their official capacities. Those claims will, therefore, be dismissed without prejudice for, if applicable law permits, their refiling in a court of competent jurisdiction. The partial motion for judgment on the pleadings—to the extent it asserts the defense of lack of subject-matter jurisdiction in accordance with Rule 12(b)(1)—will be granted on that basis.

### b.  Prospective injunctive relief

Washington's request for injunctive relief is moot because he is no longer incarcerated at SCI Greene, and granting leave to amend the complaint would be futile.[7] Mootness under these circumstances is a basis to grant a dismissal with prejudice, Townsend v. Holt, No. 3:13-CV-

---

[7]     The magistrate judge also explained that Washington is not entitled to the declaratory relief that he seeks, i.e.,  a declaration that the defendants' actions were unlawful, because "declaratory judgment is unavailable 'solely to adjudicate past conduct' or 'to proclaim that one party is liable to another.'" (ECF No. 66 (quoting Corliss v. O'Brien, 200 F. App'x 80, 84 (3d Cir. 2006).) Washington did not object to that conclusion. This court must, therefore, "'only satisfy itself that there is no clear error on the face of the record in order to accept the…[R&R].'" Ortiz v. Smith, No. CV 20-649, 2021 WL 75804, at *1 (E.D. Pa. Jan. 8, 2021) (quoting FED. R. CIV. P. 72, 1983 advisory committee notes). The court cannot discern any clear error on the face of the R&R with respect to the conclusion that Washington is not entitled to declaratory relief. The court adopts the R&R with respect to this issue.

758, 2013 WL 4459023, at \*4, n.8 (M.D. Pa. Aug. 16, 2013), which constitutes a judgment on the merits, <u>Bank Leumi USA v. Kloss</u>, 331 F. Supp. 3d 404, 410 (D.N.J. 2018). The judgment granted here, however, is not a *final* judgment that is immediately appealable to the Third Circuit Court of Appeals, pursuant to Federal Rule of Civil Procedure 54(b), because this action presents more than one claim for relief and involves multiple parties. 5C CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1372 (3d ed. 2004) ("[I]f the court grants a partial judgment on the pleadings or a judgment on the pleadings only with respect to the claims of some (but not all) of the parties, Rule 54(b) applies, preventing immediate appellate review unless the court certifies that there is no just reason for delay.") (collecting decisions)).

### C.  Washington's § 1983 claim based on a violation of his First Amendment right of access to the courts

"Title 42 U.S.C. § 1983 is not a source of substantive rights but a vehicle for vindicating rights conferred by the U.S. Constitution or by federal statute." <u>DiBella v. Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005). "To make a prima facie case under § 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." <u>See</u> <u>Groman v. Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983. This remedial statute does not create substantive rights.  <u>Maher v. Gagne</u>, 448 U.S. 122, 129 n.11 (1980). "A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right." <u>Ickes v. Borough of Bedford</u>, 807 F.Supp.2d 306, 315 (W.D. Pa. 2011).

Under the First Amendment, made applicable to the state via the Fourteenth Amendment, New York Times Co. v. Sullivan, 376 U.S. 254, 277 (1964), prisoners have a right of access to the courts, Lewis v. Casey, 518 U.S. 343 (1996). The Supreme Court set forth specific criteria that a court must consider when determining whether a plaintiff has alleged a viable claim of denial of the right to access to the courts. Christopher v. Harbury, 536 U.S. 403 (2002). A party must identify all the following in the complaint: (1) a nonfrivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense, but that is not otherwise available in a future suit. Id. at 415; Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). A plaintiff must state in the complaint the underlying claim with the requirements of Federal Rule of Civil Procedure 8 to the same degree as if the underlying claim was being independently pursued. Christopher, 536 U.S. at 417. The factual allegations in the complaint must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the " 'arguable' nature of the underlying claim is more than hope." Id. at 416.

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). To establish a §1983 retaliation claim, a plaintiff bears the burden of satisfying three elements. A plaintiff must demonstrate that: (1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Washington in the complaint alleges that he submitted two grievances at SCI Greene but did not receive a response to either grievance. (ECF No. 20 at 6.) He alleges that his § 1983

19

claim for violations of his rights guaranteed by the First Amendment is based upon "access to the courts" because the "defendants" refused to answer his grievances. (Id.)

The magistrate judge recommended that the court grant the named defendants' partial motion for judgment on the pleadings with respect to Washington's § 1983 claim based upon violation of his right of access to the courts guaranteed by the First Amendment because a prison's failure to respond to a grievance does not violate a prisoner's constitutional right. (ECF No. 62 at 8-10.) The magistrate judge explained that—at best—a prison's failure to respond to a prisoner's grievance "would simply allow the prisoner to overcome an affirmative defense of non-exhaustion." (Id. at 9.) The magistrate judge noted that a prisoner does not have a constitutional right to a grievance response.

The magistrate judge also recommended that judgment be entered against Washington with respect to his First Amendment § 1983 claim to the extent it is based upon allegations that SCI Greene's grievance procedures (rather than merely the failure to respond to his grievances) somehow hindered his ability to access the courts. (ECF No. 62 at 9.) The magistrate judge explained that Washington did not set forth factual allegations sufficient to show plausibly that SCI Greene's grievance procedures caused Washington an actual injury because he could not pursue a legal claim; indeed, Washington's complaint was filed and docketed in this case, and, therefore, he cannot show that SCI Greene's grievance procedures prevented him from filing the instant case.

Washington in his objections to the R&R writes about the First Amendment, defendants' motion for judgment on the pleadings, and the R&R, but does not set forth an objection to any portion of the R&R with respect to the First Amendment. One district court has explained:

When neither party files timely objections to a magistrate judge's report and recommendation ("R&R") on a dispositive issue, the district court is not required to review the R&R before adopting it. Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). However, the Third Circuit has held that "in the absence of objections ... the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also Fed R. Civ. P. 72, 1983 advisory committee notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Ortiz v. Smith, No. CV 20-649, 2021 WL 75804, at *1 (E.D. Pa. Jan. 8, 2021).

To the extent Washington's First Amendment § 1983 claim is based upon allegations that the named defendants did not respond to his grievances, it is recognized that a prisoner does not have a constitutional right to a grievance response:

Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. Booth v. King, 346 F.Supp.2d 751, 761(E.D.Pa.2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. Burnside v. Moser, 138 Fed.Appx. 414, 415 (3d Cir.2005)(not precedential) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991)). Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. Hoover v. Watson, 886 F.Supp. 410, 418–419 (D.Del.), aff'd 74 F.3d 1226 (3d Cir.1995). Moreover, "[t]he failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, 1999 WL 305240, at *2, (E.D.Pa. May 12, 1999) (citing Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994)). Therefore, " '[i]f the state elects to provide a grievance mechanism, violations of its procedures do not...give rise to a 1983 claim.' " Hoover, 886 F.Supp. at 418–19 (quoting Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo.1986)).

Dickens v. Taylor, 464 F. Supp. 2d 341, 352–53 (D. Del. 2006).

Based upon the forgoing and after a review of the submissions of the parties, the R&R, the objections and responses to the R&R, this court cannot discern any clear error on the face of the R&R that would entitle Washington to relief. In other words, the court will adopt the R&R to

the extent that the magistrate judge recommended that the partial motion for judgment on the pleadings be granted with respect to Washington's § 1983 claim for violations of his right to access the court guaranteed by the First Amendment because the named defendants did not respond to his grievances.

Under § 1983, Washington cannot recover from the named defendants for failing to respond to his grievances, and, therefore, the dismissal of this claim will be with prejudice. The court notes that a dismissal with prejudice for failure to state a claim constitutes a judgment on the merits. Federated Dep't Stores, Inc. v.  Moitie, 452 U.S. 398, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'") (quoting Angel v. Bullington, 330 U.S. 183, 190 (1947)). The judgment granted here, however, is not a *final* judgment that is immediately appealable to the Third Circuit Court of Appeals, pursuant to Federal Rule of Civil Procedure 54(b). Based upon the foregoing, the partial motion for judgment on the pleadings will be granted in part to the extent the § 1983 claims asserted based upon violations of the First Amendment for failure to file a response to Washington's grievances will be dismissed with prejudice.

To the extent Washington's First Amendment § 1983 claim is based upon allegations that the SCI Greene grievance procedures hindered his ability to access the courts, to state a § 1983 claim of the denial of access to the courts, a prisoner must allege that "his efforts to pursue a legal claim were hindered and he suffered an actual injury" with respect to a legal claim about his sentence or conditions of confinement. Ross v. Clerk of Cts. of Ct. of Common Pleas of Phila., Pa., 726 F. App'x 864, 865 (3d Cir. 2018). Here, Washington did not set forth factual allegations sufficient to show plausibly that SCI Greene's grievance procedures hindered his ability to access the courts to set forth claims about his sentence or conditions of confinement;

indeed, as the magistrate judge explained, Washington filed the complaint in this case and did

not allege that he was prohibited or prevented in any way from accessing the courts. Under those

circumstances, the court cannot discern any clear error on the face of the R&R with respect to

Washington's First Amendment § 1983 claim to the extent it is based upon allegations that SCI

Greene's grievance procedures prohibited him from accessing the court. The partial motion for

judgment on the pleadings will be granted with respect to that claim. The dismissal of the claim

is with prejudice based upon any legal claim asserted in the complaint filed in this case. To the

extent the dismissal with prejudice constitutes a judgment on the merits, the judgment is neither

final nor appealable under Rule 54(b).

### D.  Washington's § 1983 claim based upon alleged violations of his rights guaranteed by the Fourteenth Amendment

In the complaint, Washington attempts to describe the contours of the Fourteenth

Amendment, but does not explain how the named defendants violated his rights guaranteed by

the Fourteenth Amendment. (ECF No. 20 at 6.) He specifically alleges, however, that his

constitutional rights guaranteed by the First and Eighth Amendments were violated when the

named defendants used excessive force against him and denied him access to the courts. (Id.)

The Fourteenth Amendment provides:

> All persons born or naturalized in the United States, and subject to the
> jurisdiction thereof, are citizens of the United States and of the state wherein they
> reside. No state shall make or enforce any law which shall abridge the privileges
> or immunities of citizens of the United States; nor shall any state deprive any
> person of life, liberty, or property, without due process of law; nor deny to any
> person within its jurisdiction the equal protection of the laws.

U.S. CONST. AMEND. XIV § 1. One court has explained:

> Due process protections extend to both substantive and procedural
> violations of the Fourteenth Amendment. See Planned Parenthood of S.E. Pa. v.
> Casey, 505 U.S. 833, 846–87, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("[I]t is

23

settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure." (citation and internal quotation marks omitted)). "[T]he substantive component of the Clause ... protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Whereas the procedural component "provide[s] a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." Id.

Saucon Valley Manor, Inc. v. Miller, 392 F. Supp. 3d 554, 569 (E.D. Pa. 2019). Based upon the allegations in the complaint, it appears that Washington is alleging that the named defendants violated his substantive due process rights by: (1) using excessive force against him; or (2) failing to respond to his grievances.

The protections afforded by the Eighth Amendment against federal governmental interference are applied against the states through the substantive component of the Fourteenth Amendment due process clause. Estelle v. Gamble, 429 U.S. 97, 101–02 (1976) (citing Robinson v. California, 370 U.S. 660 (1962)); Sistrunk v. Lyons, 646 F.2d 64, 66–67 (3d Cir.1981)). The standards under the Eighth Amendment and the standards under the Fourteenth Amendment are fundamentally identical. Furman v. Georgia, 408 U.S. 238, 422 n. 4 (1972) (Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical."). As explained by one court:

> [T]he Supreme Court has held that the prohibition against cruel and unusual punishment is "incorporated" into the Fourteenth Amendment's proscription of state deprivations of liberty without due process of law. Although the analytical basis for the "incorporation doctrine" has not been precisely articulated, the result which it establishes in this case is clear: freedom from cruel and unusual punishment is one aspect of the "liberty" recognized by the Due Process Clause, and this freedom is entitled to an identical degree of substantive protection from state infringement as that which applies to federal infringements under the Eighth Amendment.

United States ex rel. Hoss v. Cuyler, 452 F.Supp. 256, 281 (E.D. Pa.1978). The Supreme Court, however, has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

Here, the magistrate judge recommended that—to the extent the § 1983 claim based upon violations of Washington's rights guaranteed under the Fourteenth Amendment is based upon the use of excessive force against him—judgment on the pleadings be granted with respect to that claim pursuant to the "explicit source rule" because the Eighth Amendment expressly prohibits the use of excessive force in these circumstances.  (ECF No. 66 at 11-12.) The magistrate judge also recommended that—to the extent the § 1983 claim based upon violations of Washington's rights guaranteed under the Fourteenth Amendment is based upon the named defendants' failure to respond to his grievances—judgment on the pleadings should be granted with respect to that claim because, as discussed above, a defendant does not have a constitutional right to a prison grievance response. Washington in his objections quotes portions of the Fourteenth Amendment, but does not assert a specific objection to the recommendations of the magistrate judge. This court must, therefore, "'only satisfy itself that there is no clear error on the face of the record in order to accept the…[R&R].'" Ortiz, 2021 WL 75804, at *1 (quoting Fed. R. Civ. P. 72, 1983 advisory committee notes).

The court rejects the R&R to the extent the magistrate judge concluded that judgment should be entered in favor of the named defendants pursuant to the explicit source rule with respect to Washington's § 1983 claim based upon violations of his Fourteenth Amendment's

rights to be free from cruel and unusual punishment or excessive force. Washington's claim in this regard is best stated as: "a § 1983 claim based upon violations of the Eighth Amendment standards barring cruel and unusual punishment as incorporated against the states via the Fourteenth Amendment's substantive due process provision," or more simply, "a claim that his Fourteenth Amendment substantive due process right to be free of cruel and unusual punishment has been violated." Under those circumstances, dismissal with prejudice of the claim is not warranted, and the partial motion for judgment on the pleadings on that claim will be denied on that basis. There, however, will not be two claims based upon the same alleged Eighth Amendment violations, and the court will recognize that to the extent the separately plead Fourteenth Amendment claim is based upon the same violations of the Eighth Amendment, it is subsumed into the Eighth Amendment claim.

To the extent Washington's § 1983 claim for violations of his rights guaranteed under the Fourteenth Amendment is based upon the named defendants' failure to respond to his grievances or SCI Greene's grievance procedures that prevented him from accessing the courts, the claim is the same as the claims asserted under the First Amendment. Indeed, this claim is subsumed into the First Amendment § 1983 claims for the same reasons the Fourteenth Amendment § 1983 claim for use of excessive force was subsumed into the Eight Amendment § 1983 claim. Because the First Amendment § 1983 claims based upon the failure to respond to grievances and SCI Greene's grievance procedures were dismissed with prejudice, this Fourteenth Amendment § 1983 claim must be dismissed with prejudice. As discussed previously, a prisoner does not have a constitutional right to a response to his grievance and Washington cannot show that SCI Greene's grievance procedures prevented him from filing the claims at issue in this case. Under those circumstances, Washington cannot recover under § 1983 on those bases. To the extent the

dismissal with prejudice constitutes a judgment on the merits of that claim, the judgment is not final or appealable pursuant to Rule 54(b) for the reasons set forth above.

> **E.  Washington's § 1983 claims against Gilmore, Trout, and Lackey based upon their supervisory authority.**

The magistrate judge recommended that the partial motion for summary judgment should be granted and judgment entered in favor of Gilmore, Trout, and Lackey because Washington did not set forth factual allegations sufficient to plausibly show their personal involvement in the violation of his constitutional rights. (ECF No. 62 at 12-14.)

It is well established that civil rights claims cannot be premised on the theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. Rizzo v. Goode, 423 U.S. 362, 371–72 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir.1976). Liability cannot be based solely on the basis of a defendant's supervisory capacity. The plaintiff must allege that the official had knowledge of or acquiesced in any purported acts of constitutional mistreatment. Rode, 845 F.2d at 1207.

Washington in his objections does not argue that the magistrate judge's conclusion that he did not set forth factual allegations sufficient to establish supervisory liability against Gilmore, Trout, and Lackey was erroneous; rather, he reiterates his allegation that the use of mace against him in the shower was a *preplanned* attack by the defendants. (ECF No. 65 at 2.) The court will consider the factual allegations about each of the supervisory defendants, i.e., Gilmore, Trout, and Lackey, to determine whether Washington set forth factual allegations

sufficient to show he is entitled to relief based upon a supervisory theory of liability under §

1983.

The only factual allegations against Gilmore are that he is the warden of SCI Greene and

responsible "for the operation of SCI Greene and for the welfare of all the inmates in that

prison." (ECF No. 20 at 1.) It is well established, however, that claim of a constitutional

deprivation cannot be premised merely on the fact that a defendant was a prison supervisor when

the incidents set forth in a complaint occurred. Constitutional tort liability is personal in nature

and can only follow personal involvement in the alleged wrongful conduct shown through

specific allegations of personal direction or of actual knowledge and acquiescence in the

challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir.1997). The § 1983

claims asserted against Gilmore based upon a theory of supervisory liability must, therefore, be

dismissed without prejudice.

With respect to Lackey, Washington alleges:

-   she was a unit manager at SCI Greene assigned to the mental health unit in which the
    incidents alleged in the complaint took place;

-   Trout said Lackey ordered "accountability status" and sent her recommendation to
    Crum who signed off on the recommendation (id.); and

-   Trout said Lackey did not have to provide Washington with a "write up" to place
    Washington on "accountability status" (id.).

The foregoing allegations do not show that Lackey had personal involvement in the wrongs

complained about by Washington in this case, i.e., he was subject to excessive force when mace

was used against him in the shower. In other words, the foregoing allegations do not show

plausibly that Lackey had knowledge of or acquiesced in the constitutional deprivations alleged

by Washington. The § 1983 claims asserted against Lackey based upon a theory of supervisory

liability must, therefore, be dismissed without prejudice.

Washington sets forth the following factual allegations against Trout:

– Trout told two prison officials to take Washington to the law library after he
received his legal mail (ECF No. 20 at 3);

– McCone, another correctional officer, told the prison officials to take Washington
to the "strip cage" because the law library was being used and "Trout would see
…[Washington] in the strip cage." (Id.)

– Trout participated in the "planned use of force" against Washington (id.);

– Trout said that on the same day:
  o Trout either received a call or heard himself that there was a "disturbance
  on GB Unit and somebody got spray[ed]" (id.);
  o Trout was told that Washington had the back end of a razor in the shower
  (id.);
  o Trout retrieved his gas mask, went to Washington in the shower, and
  ordered Washington to "push the razor under the shower door" (id.);
  o as Washington was on his knees, Washington "pushed out the back end to
  the razor" and Trout told Washington to "cuff up" so Washington could be
  "assess[ed] by medical" (id.);
  o after Trout placed handcuffs on Washington, Washington was falling to
  the ground, and Trout ordered his officers to hold up Washington and to
  get something to cover Washington's naked body (id.);
  o an orange smock was used to cover up Washington (id.);
  o the razor blade did not have fingerprints on it because any fingerprints
  were washed off by the shower water (id.);
  o Trout did not pick up the razor off the shower floor because he was
  "dealing" with Washington (id.);
  o Trout lost track of the razor (id.);
  o Washington was assessed and placed in the "P.O.C." cell (id.);
  o Lackey ordered "accountability status" and sent her recommendation to
  Crum who signed off on the recommendation (id.);
  o Crum conducted a security search of Washington's cell and could "destroy
  anything that belong[ed] to the state or that was…[given to Washington]
  by the state" and a confiscation slip was not required (id.);
  o Trout would have to see the "tape" to determine what was taken out of
  Washington's GB10 cell and destroyed during the security search (id. at
  4); and
  o Lackey did not have to provide Washington with a "write up" to place
  Washington on "accountability status" (id.).

Despite Washington's conclusory allegation that Trout participated in the "planned use of force" against Washington, the allegations set forth in the complaint do not show plausibly that Trout had prior knowledge of or participated in the allegedly unconstitutional excessive use of force against Washington, i.e., the use of mace while he was naked in the shower. According to Washington, Trout reported that he was informed about the use of mace after it occurred and then went to the showers to address the situation. Washington does not allege that Trout had knowledge of or participated in any excessive use of force after Trout arrived at the shower; rather, Trout ordered Washington to be handcuffed and an orange smock retrieved to cover Washington's naked body. Those allegations do not support a reasonable inference that Trout knew about or participated in a preplanned attack on Washington. The court need not accept as true the conclusory allegation that Trout participated in the excessive use of force against Washington. Under those circumstances, Washington failed to set forth factual allegations sufficient to plausibly show he is entitled to relief from Trout based upon a theory of supervisory liability. The § 1983 claims asserted against Trout based upon a theory of supervisory liability must, therefore, be dismissed without prejudice.

Washington in his objections and supplements to his objections attempts to set forth *additional* factual allegations to support his claims against Gilmore, Lackey, and Trout. This court, however, cannot consider those additional factual allegations referred to in the objections to determine whether to reject or adopt the R&R because they were not included in the complaint that was presented to the magistrate judge. A motion for judgment on the pleadings, including a motion for judgment on the pleadings in which the defendant asserts a Rule 12(b)(6) defense, must be decided on the face of the pleadings, Sungard Recovery Servs. L.P. v. Unisource

<u>Worldwide, Inc.</u>, No. CIV.A. 02-CV-3845, 2002 WL 32107941, at *2 (E.D. Pa. Oct. 30, 2002)

(recognizing a motion for judgment on the pleadings must be decided "on

the face of the pleadings alone"), and "[a]rguments not presented to a magistrate judge and raised

for the first time in objections to the magistrate's recommendations are deemed waived[,]" <u>In re</u>

<u>Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3</u>, 971 F.3d

433, 444 (3d Cir. 2020). Under those circumstances, the court cannot consider the factual

allegations referred to in the objections to determine whether to adopt or reject the R&R with

respect to this issue. The court will adopt the R&R with respect to the magistrate judge's

recommendation that Washington did not set forth factual allegations to plausibly show he is

entitled to relief from Gilmore, Lackey, or Trout. The partial motion for judgment on the

pleadings will be granted with respect to those defendants and the claims asserted against them

in their supervisory capacity will be dismissed without prejudice. The court's ruling does not

preclude Washington from filing—if warranted under applicable law—a motion for leave to file

an amended complaint to set forth additional allegations against Gilmore, Trout, and Lackey to

show plausibly that he is entitled to relief from those defendants.

### F.  Washington's additional allegations

Washington in his objections and supplements to his objections attempts to set forth new

claims and allegations. As discussed above, however, a motion for judgment on the pleadings,

including a motion for judgment on the pleadings in which the defendant asserts a Rule 12(b)(6)

defense, must be decided on the face of the pleadings, <u>Sungard Recovery</u>, 2002 WL 32107941,

at *2, and "[a]rguments not presented to a magistrate judge and raised for the first time in

objections to the magistrate's recommendations are deemed waived[,]" <u>In re Nat'l Collegiate</u>

<u>Student Loan Trusts</u>, 971 F.3d at 444. Under those circumstances, the court cannot and will not

consider the new claims and factual allegations asserted by Washington in his objections and supplements to the objections to decide the pending motion for judgment on the pleadings.

**VI.     Conclusion**

For all these reasons, Washington's objections will be overruled and the R&R will be adopted in part and rejected in part as set forth in this opinion. The partial motion for judgment on the pleadings will be denied with respect to Washington's § 1983 claim for violations of his Fourteenth Amendment rights based upon the same violations of the Eighth Amendment (excessive force). The partial motion for judgment on the pleadings will be granted in other respects, subject to the limitations about the kind of relief that may be ordered, as follows:

–   the § 1983 claims for monetary damages asserted against the named defendants in their official capacities will be dismissed without prejudice to the refiling, if applicable law permits, of those claims in a court of competent jurisdiction;

–   the § 1983 claims for injunctive relief against the named defendants in their official capacities are moot and will be dismissed with prejudice;

–   the § 1983 claims for violations of Washington's right of access to the courts under the First and Fourteenth Amendments based upon the named defendants failing to respond to his grievances and SCI Greene's grievance procedures preventing Washington from filing the claims asserted in the complaint will be dismissed with prejudice; and

–   the supervisory claims asserted against Gilmore, Trout, and Lackey will be dismissed without prejudice.

The judgments based upon the dismissal with prejudice of claims are neither final nor appealable.

An appropriate order and judgment will be entered.

By the court,

Dated: March 17, 2021                    **/s/ JOY FLOWERS CONTI**
                                         Joy Flowers Conti
                                         Senior United States District Judge

Cc:    Jerome Junior Washington
       HV-0282
       SCI Rockview
       1 Rockview Place
       Bellefonte, PA  16823

       Counsel of record
       (Via CM/ECF electronic mail)